UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-80086-DMM

UNITED STATES OF AMERICA,
   Plaintiff,
v.

JOSE FRANCISCO CARDENAS-CHAVEZ,
   Defendant.
_____/

**DEFENDANT CARDENAS'
MOTION FOR DOWNWARD DEPARTURE / VARIANCE**

  Defendant Jose Francisco Cardenas-Chavez, through counsel, respectfully requests that this Honorable Court vary downward from the advisory guideline range calculated in the Presentence Investigation Report (PSR) [ECF No. 40] pursuant to 18 U.S.C. § 3553 and *United States v. Booker*, 543 U.S. 220, 125 (2005). Defendant offers the following as grounds in support of this motion.

I. <u>Background</u>

1. On July 18, 2024, a federal Grand Jury sitting in the Southern District of Florida returned an Indictment charging Defendant Cardenas with one count of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, and one count of distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii). ECF No. 7.

2. On September 18, 2024, Mr. Cardenas pled guilty to Counts 1 and 2 of the Indictment before the Honorable United States District Judge Donald M. Middlebrooks. ECF Nos. 35, 36, 37.

3. On September 18, 2024, this Honorable Court scheduled sentencing for February 6, 2025. ECF No. 38. On January 30, 2025, this Honorable Court re-set sentencing in this matter to February 7, 2025. ECF No. 47.

4. On January 7, 2025 the United States Probation Office filed the draft PSR as to Mr. Cardenas. ECF No. 40.

5. On January 21, 2025, Mr. Cardenas filed an unopposed motion to continue sentencing which this Honorable Court denied. ECF Nos. 41-43.

6. On January 27, 2025, Mr. Cardenas filed his objections to the draft PSR. ECF No. 44.

7. On January 28, 2025, the Government filed its objections to the draft PSR. ECF No. 45.

8. On January 29, 2024, the United States Probation Office filed an Addendum to the PSR as to Mr. Cardenas. ECF No. 46.

9. The government opposes this motion.

## II. Memorandum of Law and Incorporated Argument

### Law

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court excised the statutory provision of 18 U.S.C. § 3553 that made the Sentencing Guidelines mandatory, thereby rendering them advisory. Id. at 244-46. While this Court must still correctly calculate the guideline range, there is no presumption that a guideline sentence is a reasonable and appropriate sentence. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The Court must make an individualized assessment based on the

facts presented.  Id.  When fashioning such a sentence, the sentencing court must consider the factors set out in 18 U.S.C. § 3553(a).  As Justice Ginsburg succinctly stated in *Kimbrough v. United States*,

> [T]he statute, as modified by *Booker*, contains an overarching provision instructing district courts to "impose a sentence sufficient, but not greater than necessary," to accomplish the goals of sentencing, including "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant."

*Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (citing 18 U.S.C. § 3553).

In *Pepper v. United States* Justice Sotomayor quoted the language of Justice Kennedy in *Koon v. United States*: "[I]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crimes and punishment to ensue." *Pepper v. United States*, 131 S. Ct. 1229, 1239-40 (2011) (quoting *Koon v. United States,* 518 U.S. 81, 113 (1996)).  Further, the District Court must fashion a sentence that fits the offender and not merely the crime.  Id. at 1240.

Justice Sotomayor continued, "[B]oth Congress and the Sentencing Commission thus expressly preserved the traditional discretion of sentencing courts "to conduct an inquiry broad in scope, largely unlimited either as to the kind of

information [they] may consider, or the source from which it may come." *Pepper*, 131 S. Ct. at 1240 (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)).

Congress gave sentencing Courts broad discretion in sentencing: "[I]n determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, *without limitation*, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." *Pepper*, 131 S. Ct at 1240 (citing 18 U.S.C. § 3661) (emphasis added).

In *Gall v. United States*, the Supreme Court found that a District Judge's imposition of a 36 month sentence of probation was reasonable where the presentence report recommended a sentencing range of 30 to 37 months of imprisonment. *Gall v. United States*, 552 U.S. 38, 41- 43 (2007). In doing so, the Supreme Court reversed the Eighth Circuit Court of Appeals and remanded the case for resentencing. *Gall*, 552 U.S. at 45. In finding that the Court of Appeals should not have decided *de novo* whether the justification for a variance was sufficient or the sentence reasonable, the Supreme Court stated that, on abuse-of-discretion review, the Eighth Circuit, "should have given due deference to the District Court's reasoned and reasonable decision that the 3553(a) factors, on the whole, justified the sentence." *Gall v. United States*, 552 U.S. 38, 59-60 (2007).

As background, Brian Gall conspired with others to distribute ecstasy pills over the course of seven months. He netted $30,000 during this period of time. Of note, Gall voluntarily withdrew from the conspiracy. Id. at 41. Gall entered into a

4

plea agreement with the Government and stipulated that he was responsible for 2,500 grams of ecstasy. Id. at 42. Neither of Gall's two co-conspirators withdrew from the conspiracy and they were sentenced to 30 and 37 months of imprisonment, respectively. Id. at 43. The Court in *Gall* recognized that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms but added that offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. Id. at 48. The Court stated that probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. *Gall*, 552 U.S. at 48 (citing USSG § 5B1.3).

Argument

Mr. Cardenas' wife, children, and extended family support him. Mr. Cardenas first met his future wife in elementary school in Mexico. After his wife moved to the United States, she reconnected with Jose when she was vacationing in Mexico. They remained in contact and started dating in 2010, and have been together ever since. They are raising two young children. Mr. Cardenas' family recognizes that he is a good father, family oriented, and a hard worker.

Every summer Mr. Cardenas, his wife, and their children travel to Mexico for a month, sometimes longer, to visit family. On July 30, 2024, the date of his arrest, Mr. Cardenas was returning from Mexico with his wife and two children. They

5

brought three plastic bottles containing honey that his family purchased from an elderly man in Campeche that harvests honey. As discussed in PSR paragraph 29, the Government seized a liquid substance and it tested positive for methamphetamine. The liquid substance was honey contained in plastic bottles that Mr. Cardenas and his family bought in Mexico. Mr. Cardenas informed the law enforcement officers at the airport that the liquid substance was honey.

On August 11, 2024, counsel spoke via a video telephone call with Mr. Cardenas' mother who was in Campeche. She confirmed that she gets her honey from the same elderly man in her home town that sold the honey to her son. She showed counsel a plastic bottle of the honey that she purchased for herself. She confirmed that the elderly man in Campeche packages his honey in plastic bottles. Mr. Cardenas' mother has travelled to the United States to support her son, and his family. She intends to be present for Mr. Cardenas' sentencing.

On August 14, 2024, the Government informed counsel that the DEA lab test results confirmed that there was no methamphetamine in the liquid. As Mr. Cardenas told the law enforcement officers at the airport, the liquid was honey.

Mr. Cardenas' behavior proves that he has respect for the law. Mr. Cardenas' offense occurred in 2019; he was indicted five years later - on July 18, 2024; and arrested for the instant offense on July 30, 2024. Mr. Cardenas has not been arrested for any other offense between October 8, 2019 and July 30, 2024. On August 7, 2024, the Honorable U.S. Magistrate Judge McCabe released Mr. Cardenas on a personal surety bond. Mr. Cardenas has complied with all terms of

his pretrial release, attended programs to address his substance abuse, and worked in construction continuously to provide for his family.

PSR paragraphs 49, and 50 state that Mr. Cardenas received a citation and a notice to appear in 2016 and 2018, respectively. In 2016, the Florida Fish and Wildlife Conservation Commission issued a citation to Mr. Cardenas for possessing two undersized pompano fish. The pompano were in a container along with two catfish. Mr. Cardenas was fishing with a family member. He used the catfish as bait to catch the pompano. He intended to serve the pompano for dinner with his family.

In 2018, the Florida Fish and Wildlife Conservation Commission issued a notice to appear to Mr. Cardenas for possessing 40 bluefish, that being 10 in excess of the bag limit. He was fishing with two family members. They caught 40 bluefish but the group was only authorized to have ten bluefish for every person fishing. Florida Fish and Wildlife Conservation Commission seized 10 bluefish and allowed the group to keep 30 bluefish. Mr. Cardenas' family cooked the bluefish for dinner.

Before his arrest on the instant charges, Mr. Cardenas had withdrawn from the drug conspiracy. He realized his mistake and made caring for his family his highest priority. Mr. Cardenas is not a danger to the safety of the community, and he will not reoffend. He recognizes the life altering error that he made in this case. He is committed to continue on the law abiding path that he has been on for several years.

*Gall* is an example of the U.S. Supreme Court upholding a District Court's discretion to impose a sentence significantly below the Guidelines. Mr. Cardenas seeks a significant downward variance from the advisory Guideline recommended range of imprisonment.

For comparison purposes counsel offers the following. The District Court sentenced Brian Gall to probation. Gall conspired with others to distribute ecstasy pills over the course of seven months and netted $30,000 during this period of time. Cardenas' role in the instant offense was significantly smaller than that of Gall. Like Gall, Jose Cardenas withdrew from the conspiracy. Brian Gall's guidelines called for a sentence of incarceration yet the District Court imposed a three year sentence of probation. In reversing, the Supreme Court found that the Eighth Circuit should have given due deference to the District Court's reasoned and reasonable decision that the 3553(a) factors, on the whole, justified the sentence of 36 months probation. See *Gall v. United States*, 552 U.S. 38 (2007).

Mr. Cardenas is steadfast in his decision to never violate the law again. Mr. Cardenas and his wife have two children ages 5 and 12. Mr. Cardenas hopes that this Honorable Court will allow him to return to his family as soon as possible to help return stability to their lives.

<u>Conclusion</u>

Based on the foregoing, Mr. Cardenas respectfully requests that this Honorable Court vary significantly below the advisory guideline range determined at sentencing. Such a sentence will be sufficient, but not greater than necessary to

reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public.

WHEREFORE, Mr. Cardenas respectfully requests that this Honorable Court grant him a significant downward variance pursuant to the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

**Robert W. Stickney**
Robert W. Stickney / Fla. Bar No. 883130
Counsel for Defendant
100 S.E. 3rd Avenue, Suite 2210
Fort Lauderdale, Florida 33394
Ph: (954) 767-8908 / E-mail: rws@stickneylaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed by CM/ECF this 30th day of January 2025.

**Robert W. Stickney**
Robert W. Stickney / Fla. Bar No. 883130
Counsel for Defendant
100 S.E. 3rd Avenue, Suite 2210
Fort Lauderdale, Florida 33394
Ph: (954) 767-8908 / E-mail: rws@stickneylaw.com